1        IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLLEEN DECAMBALIZA,
on Behalf of Herself and
All Others Similarly Situated,

                                                    OPINION AND ORDER

        Plaintiffs,

                                                    13-cv-286-bbc

        v.

QBE HOLDINGS, INC.; QBE INSURANCE
CORPORATION; QBE FINANCIAL
INSTITUTIONAL RISK SERVICES, INC.;
BANK OF AMERICA CORPORATION; BANK OF
AMERICA, N.A.; BAC HOME LOANS
SERVICING, LP; BANC OF AMERICA
INSURANCE SERVICES, INC.; BALBOA
INSURANCE COMPANY; MERITPLAN
INSURANCE COMPANY; and NEWPORT
MANAGEMENT CORPORATION,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Under standard residential mortgage agreements, if a borrower's hazard insurance

lapses, the lender may "force-place" insurance on the home by arranging for its own policy

at the borrower's expense.  In this case, plaintiff Colleen Decambaliza contends, on her own

behalf and on behalf of a proposed class of similarly situated homeowners that defendants

conspired to defraud homeowners by monitoring their hazard insurance for deficiencies,

force-placing new insurance with unnecessary and unreasonably high premiums and then

sharing in the profits through kickbacks and commissions.  She has asserted claims for

monetary relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; the Wisconsin Organized Crime Control Act (WOCCA), Wis. Stat. § 946.83(3); and various other state laws.  Before the court are defendants' motions to dismiss, motion for oral argument and motion for leave to file documents.  No class has been certified; plaintiff moved for class certification and then filed a motion to stay class certification, which was granted.  Dkt. #7.

Defendants QBE Holdings, Inc., QBE Insurance Corporation, QBE Financial Institutional Risk Services, Inc., Balboa Insurance Company, Meritplan Insurance Company and Newport Management Corporation (the QBE defendants) have moved to dismiss plaintiff's complaint on the following grounds:  (1) plaintiff lacks standing with respect to defendants QBE Holdings, Balboa and Newport; (2) the filed rate doctrine bars all of plaintiff's claims; and (3) plaintiff has failed to state a claim under federal or state law.  Dkt. #37.  Defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, LP and Banc of America Insurance Services, Inc. (the Bank of America defendants) similarly assert that plaintiff's complaint should be dismissed as barred by the filed rate doctrine and for failure to state a claim.  Dkt. #41.

Plaintiff has alleged facts that elicit sympathy.  It is understandable that she and others in similar situations believe they have been treated unfairly.  However, the law does not support her lawsuit.  The filed rate doctrine bars all of her claims except the breach of contract and implied covenant of good faith and fair dealing claims against defendants Bank of America, N.A. and BAC Home Loans related to backdating hazard insurance policies.

2

Those claims will be dismissed for failure to state a claim because backdating is a reasonable practice under the terms of the mortgage contract.  Given these rulings, it is unnecessary to consider defendants' remaining arguments related to standing and failure to state a claim.

The Bank of America defendants seek leave to attach to their motion plaintiff's mortgage agreement and several letters referred to in the complaint at ¶¶ 26-29, 44, 46-50 & 88.  Dkt. #43.  Because plaintiff has not opposed this request, the documents are referred to in plaintiff's complaint and are central to her claims, I will grant the motion.  <u>Burke v. 401 N. Wabash Venture, LLC</u>, 714 F.3d. 501, 505 (7th Cir. 2013) (documents attached to motion to dismiss are part of pleadings if referred to in plaintiff's complaint and central to claim).  I have not considered the documents that plaintiff filed regarding the findings of the New York Department of Financial Services because they are not relevant to the issues to be decided.  Finally, I am denying as unnecessary the QBE defendants' motion for oral argument.  Dkt. #40.

Accepting plaintiff's well-pleaded facts as true and drawing all inferences in her favor, <u>DeGuille v. Camilli</u>, 664 F.3d 192, 195 (7th Cir. 2011), I find from the complaint and the relevant documents referred to in it that plaintiff has fairly alleged the following facts.

ALLEGATIONS OF FACT

A.  <u>The Force-Placed Insurance Industry</u>

Standard form residential mortgage agreements require borrowers to purchase and maintain hazard insurance (usually for flood, wind or fire damage) as a protection for the

lender's interest in the secured property.   Borrowers are permitted to choose their own hazard insurance provider and policy, but coverage must equal or exceed the borrower's financial obligation to the lender.   After the parties agree to a mortgage, the lender often delegates various duties, such as monitoring the payment of insurance premiums, to a subsidiary who services the loan.   Monitoring is known as "insurance tracking," a practice that alerts the loan servicer if and when a borrower's hazard insurance has lapsed. If a borrower's hazard insurance ends or if the lender and insurer dispute the coverage, the standard mortgage agreement permits the lender to "force place" a hazard insurance policy from a provider of its own choosing at the borrower's expense.   The mortgage loan servicer is not required to maintain the borrower's existing policy.

Government investigations into the force-placed insurance industry have brought to light unlawful and abusive practices engaged in by some lenders, mortgage loan servicers and force-placed insurance providers.   Reports and testimony from fact-finding hearings held by the New York Department of Financial Services in May 2012 revealed that collusion may occur where a loan servicer has a pre-arranged agreement with an insurance provider to purchase forced-placed policies at high-priced premiums, and in turn, the insurance provider pays the servicer a fee, commission, rebate or other consideration.   In addition to kickbacks, lenders and loan servicers often have other financial incentives to force-place insurance, such as receiving discounted or free insurance tracking.   Borrowers are led to believe their high premiums are necessary to cover the cost of protecting the lender's interest in the property.

4

The lender does not disclose to the borrower the pre-arranged agreements between the lenders, servicers and insurance providers.

### B.  <u>The Parties and Their Relationships</u>

Plaintiff Colleen Decambaliza is a resident of Fall Creek, Wisconsin.  She has a residential mortgage loan on her property. Dkt. #42-1.  (The lender is listed as Countrywide Home Loans, Inc., a company later acquired by defendant Bank of America, N.A.)  Defendant BAC Home Loans Servicing, LP serviced plaintiff's and other class members' loans for defendant Bank of America, N.A. by maintaining loan portfolios, mailing mortgage statements, collecting mortgage payments, collecting and paying taxes, managing escrow accounts, monitoring maintenance of hazard insurance and conducting foreclosures.  Both BAC Home Loans and Bank of America, N.A. were subsidiaries of defendant Bank of America Corporation.  That arrangement lasted until July 2011, when BAC Home Loans merged with Bank of America, N.A.  Defendant Banc of America Insurance Services, Inc. is a wholly owned subsidiary of Bank of America, N.A. and is licensed in all 50 states.

Defendant Balboa Insurance Company provides force-placed insurance policies on real estate located throughout the United States, including Wisconsin.  It was a wholly-owned subsidiary of Countrywide Financial Corporation until July 1, 2008, when defendant Bank of America Corporation acquired Balboa and its subsidiaries, defendants Newport Management Company and Meritplan Insurance Company.  Balboa and Meritplan

became subsidiaries of defendant BAC and affiliates of defendant Banc of America Insurance Services.

From 2005 until January 12, 2010, Balboa operated under an agency agreement with defendant Banc of America Insurance Services with respect to force-placed insurance operations. Balboa also operated as a subsidiary and force-placed insurer of Bank of America, N.A. from 2008 to June 2011. Newport monitored Bank of America, N.A.'s loan portfolio to identify loans on which the hazard insurance had lapsed or provided inadequate coverage. Meritplan was a force-place insurer.

Defendant QBE Insurance Corporation is a subsidiary of defendant QBE Holdings, Inc. and writes force-placed insurance for hazard and flood coverage throughout the United States, including the state of Wisconsin. Defendant QBE Financial Institutional Risk Services, Inc. (QBE First), another subsidiary of QBE Holdings, tracks and monitors portfolios and manages the placement of force-placed insurance for QBE Insurance Corporation. (QBE First was known as ZC Sterling Corporation until February 2010 and then as Sterling National Corporation until April 2011.) QBE Holdings acquired QBE First in December 2008.

On June 1, 2011, QBE Holdings purchased Balboa's assets from Bank of America Corporation, including Balboa's employees, facilities, and its subsidiary, Newport Management. Although Bank of America Corporation retained Meritplan, the QBE defendants manage all of Balboa's force-placed business, receive Balboa's premiums and assume the risk of Balboa's force-placed insurance. Balboa's existing force-placed insurance

policies are in "run off" and are being transferred to QBE Insurance. Most Bank of America, N.A. and Balboa employees working for the force-placed insurance program at the time of sale became employed by QBE First or its affiliates. The three QBE defendants became Bank of America, N.A.'s force-placed insurer on June 1, 2011.

### C.  Defendants' Alleged Scheme

Defendant Bank of America, N.A. entered into exclusive agreements with defendant Balboa, and later the QBE defendants and their subsidiaries and affiliates to force-place high-priced hazard insurance according to terms incorporating or requiring ancillary services and arrangements designed to generate additional profits over and above the cost of insuring the property. These profits were then steered to participants in the scheme. The relationship between the Bank of America and QBE defendants and their affiliates and subsidiaries (including defendants Banc of America Insurance Services, Meritplan and Newport) was a non-competitive and exclusive relationship in which all parties involved benefitted at the expense of the borrower.

Through defendant Newport, defendant QBE FIRST monitored Bank of America, N.A.'s loan portfolio to identify loans on which the hazard insurance had lapsed or provided inadequate coverage. Once a lapsed insurance policy was identified, QBE FIRST and Newport had Bank of America, N.A. force-place insurance by purchasing a policy from defendants QBE Insurance, Balboa or Meritplan at the borrower's expense, often out of the borrower's escrow funds. Occasionally, defendants colluded to backdate force-placed

insurance premiums, which could result in duplicative coverage or coverage during periods that posed no risk of loss.  Purporting to be insurance brokers for Bank of America, N.A., the QBE defendants and their affiliated enterprises acted as conduits by channeling the excess amount of the premium among defendants as kickbacks in the form of fees, commissions, rebates and other consideration for services not rendered.


## D.   Plaintiff's Experience

As required by her mortgage agreement, dkt. # 42-1, ¶ 5, plaintiff had purchased a hazard insurance policy from Secura Insurance Company for an annual premium of $329.75 that was paid out of her escrow.  In December 2010, Secura notified plaintiff that defendant Bank of America, N.A. had stopped paying the hazard insurance premiums.  Bank of America, N.A. attributed the error to Secura and offered plaintiff force-placed insurance through defendant Meritplan for $523 per year.  After plaintiff agreed, Bank of America, N.A. notified her on September 13, 2011 that it had purchased the Meritplan insurance for July 2011 to July 2012.  Dkt. #42-4, at 5.

In the summer of 2012, Bank of America, N.A. told plaintiff that she had not been paying enough on her mortgage and needed $7,000 to get her home out of foreclosure. While reviewing her bank statements, plaintiff discovered that defendants had replaced her Meritplan policy with a new force-placed insurance policy for the QBE defendants that cost $1,950 per year.  When she asked a Bank of America representative why the QBE premium was so high, the representative continually responded that "lender-placed insurance is always

high," leading plaintiff to believe erroneously that the high premium was necessary to cover the cost of insuring the secured property. However, when plaintiff performed her own research on hazard insurance premiums, QBE quoted her a yearly premium of $525.


OPINION

A.  Filed Rate Doctrine

Defendants assert that plaintiff's federal and state claims must be dismissed under the filed rate doctrine because the allegedly excessive premium rates were filed with and approved by the Wisconsin Commissioner of Insurance. Wis. Stat. §§ 625.03 (applying chapter to all types of insurance), 625.13(1) (requiring insurance companies to file a rate with the Commissioner of Insurance within 30 days after becoming effective). Defendants have the law on their side. The United States Supreme Court discussed the filed rate doctrine in Keogh v. Chicago & N.W. Railway Company, 260 U.S. 156 (1922), addressing the question whether a private shipper could attack common carrier rates under federal antitrust law after the Interstate Commerce Commission had found the rates to be non-discriminatory and reasonable. The Court held that he could not. "Unless and until those rates are suspended, they are the legal rate." Id. at 163. The Court explained that rates set by the commission must be applied stringently to prevent unjust discrimination and could not be varied or enlarged either by contract or by tort. Id. See also Arsberry v. Illinois, 244 F.3d 558, 562 (7th Cir. 2001) (filed rate doctrine forbids court from revising terms of

sale that public utility or common carrier has filed with agency that regulates carrier's service).

The doctrine is based both on "historical antipathy to rate setting by courts" and on "a policy of forbidding price discrimination by public utilities and common carriers":

> A customer or competitor can challenge the tariff before the agency itself, and if disappointed with the agency's response can seek judicial review, 47 U.S.C. §§ 204(a)(2)(C), 402, but it cannot ask the court in any other type of suit . . . to invalidate or modify the tariff. Nor can it seek damages based on the difference between the actual tariff and a hypothetical lawful tariff. That would require the court to determine the lawful tariff, and this is not regarded as a proper judicial function.

Arsberry, 244 F.3d at 562 (citing Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 19-21 (2d Cir. 1994)). Wisconsin courts agree and have applied the doctrine to rates established by public utilities and other agencies, including the Commissioner of Insurance. Prentice v. Title Ins. Co. of Minnesota, 176 Wis. 2d 714, 724, 725, 500 N.W.2d 658, 662-63 (1993) ("the Wisconsin Insurance Code provides a regulatory remedy which bars a private rate-related suit for damages"); Servais v. Kraft Foods, Inc., 2001 WI App 165, 246 Wis. 2d 920, 928, 631 N.W.2d 629, 633, aff'd, 2002 WI 42, 252 Wis. 2d 145, 643 N.W.2d 92.

Wis. Stat. § 625.22 grants the Commissioner of Insurance the power to disapprove any rate not in accordance with § 625.11, which states that

> **(1) General**. Rates shall not be excessive, inadequate or unfairly discriminatory, nor shall an insurer charge any rate which if continued will have or tend to have the effect of destroying competition or creating a monopoly.

> **(2) Excessiveness.** (a) *Competitive market*. Rates are presumed not to be excessive if a reasonable degree of price competition exists at the consumer level with respect to the class of business to which they apply. In determining

whether a reasonable degree of price competition exists, the commissioner shall consider all relevant tests including:

1.    The number of insurers actively engaged in the class of business;

2.    The existence of rate differentials in that class of business;

3.    Whether long-run profitability for insurers generally of the class of business is unreasonably high in relation to its riskiness.

(b) *Noncompetitive market*. If such competition does not exist, rates are excessive if they are likely to produce a long run profit that is unreasonably high in relation to the riskiness of the class of business, or if expenses are unreasonably high in relation to the services rendered.

Thus, Chapter 625 provides a remedy where insurers are earning unreasonably high profits in relation to the risk of loss and where insurers' claimed expenses are unreasonably high in relation to the services they provide.

According to defendants, if the court were to evaluate the damages relating to the alleged hazard insurance premium conspiracy, it would infringe upon the authority of the Commissioner and result in an improper determination of the reasonableness of hazard insurance premiums that could lead to discriminatory pricing for their insureds.  Keeling v. Esurance Ins. Co., 2012 WL 699580, *4 (S.D. Ill. Mar. 1, 2012).  Plaintiff does not deny that the premium rates at issue in this case were filed with the Commissioner of Insurance and approved by him but argues that (1) her claims regarding improper backdating have nothing to do with insurance rates; (2) the illegal kickbacks and charges are not premiums and bear no relationship to any real risk of loss; and (3) the doctrine does not apply to non-insurance company defendants.  I will address each of plaintiff's arguments in turn.

11

1.  Improper backdating

Plaintiff contends that defendants Bank of America, N.A. and BAC Home Loans breached the mortgage contracts and the implied covenant of good faith and fair dealing by backdating hazard insurance policies in order to charge mortgagees insurance premiums for periods that had passed without damage to the property or claims arising out of damage to the property.  Cpt., dkt. #1, ¶¶ 42, 118, 124(e-f).  For example, with respect to her mortgage, plaintiff alleges that defendants force-placed a Meritplan policy on September 13, 2011 but backdated it to July 7, 2011, charged her premiums for those 67 days during which she actually did not have insurance and then distributed the profits among themselves.  In response, the Bank of America defendants raise arguments related only to plaintiff's failure to state a claim, which will be addressed below.

I agree that the filed rate doctrine does not apply to plaintiff's claims of backdating to the extent that she is challenging defendants' decision to force-place insurance during a period in which no loss occurred.  Ruling on plaintiff's backdating claim requires a decision about whether the coverage itself was appropriate and not a determination about the reasonableness of the premium rate.  Arsberry, 244 F.3d at 562-63 (not applying filed rate doctrine where plaintiffs sought injunctive relief to dissolve arrangement that prevented telephone company defendants from competing to file tariffs more advantageous to prison inmates); Keeling, 2012 WL 699580, at *4 (doctrine did not apply to defendant's practice of offering coverage and collecting premiums for insurance that, by its terms, could never be triggered).

2. Kickbacks are not premiums

Plaintiff contends that defendants manipulated the force-placed insurance process to charge premiums that bear no relationship to any real risk of loss in order to share in illegal kickbacks. According to plaintiff's complaint, the kickbacks are included as part of the high premiums. Cpt., dkt. #1 at ¶2 ("The QBE and Balboa Defendants would then pay a percentage of the unreasonably high premium to the Bank of America Defendants as a cost of maintaining the relationship, and not for any work the Bank of America Defendants performed."). Although plaintiff seeks to recoup the amount in excess of what she considers a reasonable premium, she attempts to characterize her claims as a challenge to improper and unlawful insurance practices and not to the reasonableness of the filed rate. In support, she cites cases in which some district courts have found the doctrine inapplicable to claims that defendants have manipulated the force-placed insurance process. Rothstein v. GMAC Mortgage, LLC, Case No. 12-cv-03412 (S.D.N.Y. Sept. 30, 2013); Smith v. Suntrust Mortgage Inc., 2013 WL 5305651, *5 (C.D. Cal. Sept. 16, 2013); Simpkins v. Wells Fargo Bank, N.A., 2013 WL 4510166 (S.D. Ill. Aug. 26, 2013); Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025 (N.D. Ca. 2013); Gallo v. PHH Mortgage Corp., 916 F. Supp. 2d 537, 545 (D.N.J. 2012); Kunzelmann v. Wells Fargo Bank, N.A., 2012 WL 2003337 (S.D. Fla. Jun. 4, 2012), but see Kunzelmann, 2013 WL 139913, *11-12 (S.D. Fla. Jan. 10, 2013) (noting its earlier decision limited because evidence surfaced that kickbacks were part of and not in addition to high premiums); Abels v. JP Morgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009).

In the cited cases, the courts focused on the lawfulness and purpose of the benefits that defendants derived from the excessive premiums and not on what constitutes a reasonable rate.  However, several other courts have found this to be an illusory distinction because the alleged fraud necessarily implicates the reasonableness of the filed rates.  E.g., Singleton v. Wells Fargo Bank, N.A., Case No. 12CV216-NBB-SAA at 4 (N.D. Miss. Sept. 26, 2013); Roberts v. Wells Fargo Bank, 2013 WL 1233268, *13 (S.D. Ga. Mar. 27, 2013); Kunzelmann, 2013 WL 139913, at *11-12 (filed rate defense must be considered when plaintiff had conceded that unearned commissions were part of filed rate); Schilke v. Wachovia Mortgage, FSB, 820 F. Supp. 825, 830 & 835 (N.D. Ill. 2011); In re Title Insurance Antitrust Cases, 702 F. Supp. 2d 840, 860 (N.D. Ohio 2010) (antitrust claim relating to title insurance kickback scheme); Steven v. Union Planters Corp., 2000 WL 33128256, *3 (E.D. Pa. Aug. 22, 2000); Morales v. Attorneys' Title Insurance Fund, Inc., 983 F. Supp. 1418, 1428 (S.D. Fla. 1997) (Real Estate Settlement Procedures Act claim alleging title insurance kickback scheme).

No general exception to the filed rate doctrine exists for fraudulent or wrongful conduct.  Courts regularly apply the filed rate doctrine to claims that insurers or other rate-setters have conspired to charge excessive rates to turn a profit.  McCray v. Fidelity National Title Insurance Co., 682 F.3d 229, 241 (3d Cir. 2012) (antitrust claim for fixing of title insurance premiums); Wah Chang v. Duke Energy Trading & Marketing, LLC, 507 F.3d 1222, 1224 (9th Cir. 2007) (plaintiff alleged that defendants artificially increased its power rates through anticompetitive and fraudulent manipulation of wholesale energy markets);

14

Hill v. BellSouth Telecommunications, Inc., 364 F.3d 1308, 1317 (11th Cir. 2004) (unfair trade practices, fraud and other state law claims for telephone overcharges allegedly used to meet defendant's obligations to Universal Service Fund); Wegoland, 27 F.3d at 20 (RICO action involving overcharges for telephone products and services); Taffet v. Southern Co., 967 F.2d 1483 (11th Cir. 1992) (en banc); H.J. Inc. v. Northwestern Bell Telephone Co., 954 F.2d 485 (8th Cir. 1992) (RICO claims alleging telephone company bribed utility commission members to set higher rates); Roussin v. AARP, Inc., 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009) (breach of fiduciary claims for approving excessive health insurance premiums for members); Korte v. Allstate Insurance Co., 48 F. Supp. 2d 647, 652 (E.D. Tex. 1999) (car insurance overcharges allegedly subsidized state-required risk pool).

The alleged kickbacks in this case are part of a premium that was approved by a regulatory entity.  Allowing plaintiff to challenge them would contravene the non-justiciability and non-discrimination purposes of the filed rate doctrine.  In order to calculate the amount of the alleged kickbacks, it would be necessary for this court to determine a reasonable rate and subtract it from the premium.  See, e.g., Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Association, Inc., 707 F.3d 883, 887-88 (7th Cir. 2013) ("An award of damages would require a court to determine that the rate paid was unreasonable. . ."); Medco Energi US, LLC v. Sea Robin Pipeline Co., __ F.3d __, 2013 WL 3316635, *4 (5th Cir. July 2, 2013) (although misrepresentation claims did not challenge tariff, allowing damages would conflict with filed rate because alleged wrongdoing implicated parties' rights and liabilities under natural gas tariff); Hill, 364 F.3d at 1317 ("[E]ven if a

15

claim does not directly attack the filed rate, an award of damages to the customer that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine."); Wegoland, 27 F.3d at 21 (any attempt by court to determine improper profits would require determining what rate would have been reasonable absent alleged improprieties and finding difference between two).  Plaintiff also would be paying an insurance rate different from that of other insureds if she were allowed to recoup a portion of her forced-placed insurance premiums.  Northeastern Rural, 707 F.3d at 888 ("any damages paid in such a suit would effectively alter the rate Northeastern paid for electricity"); Wah Chang, 507 F.3d at 1226; Hill, 364 F.3d at 1316-17ern.

Plaintiff's challenges should be addressed by the Wisconsin Commissioner of Insurance, who is responsible for making sure that insurers do not earn unreasonably high profits in relation to the risk of loss or claim unreasonably high expenses in relation to the services that they provide.  Wis. Stat. Ch. 625; see also Steven, 2000 WL 33128256, at *3 ("The regulatory system governing the forced placed hazard insurance rates at issue is comprehensive, including filing, rate calculation, rate review, and enforcement of rules. Therefore, under the filed rate doctrine, a question regarding reasonable rates should be addressed to the Department of Insurance.").

3.  Non-insurance company defendants

Plaintiff contends that the Bank of America defendants, QBE Holdings and QBE FIRST cannot assert the filed rate doctrine because they are not insurance companies and

giving them the benefit of the doctrine would encourage fraudulent activity by entities not subject to extensive (or any) regulatory oversight.  In support, she relies on the decisions in Abels, 678 F. Supp. 2d at 1277 and Cannon, 917 F. Supp. 2d 1025.  When presented with this argument, the court in Abels noted that

> Indeed, the purpose of the filed rate doctrine is to "'(1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved.'" Therefore, Plaintiffs argue, because the bank is not subject to the extensive administrative oversight that insurance companies are, applying the filed rate doctrine in this instance would not serve either purpose.
>
> The Court finds that Plaintiffs have the better argument.  Plaintiffs are not complaining that they were charged an excessive insurance rate, they are complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate.  Indeed, the Supreme Court "has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are validly filed rates."  Florida Municipal Power Agency v. Florida Power & Light Company, 64 F.3d 614, 617 (11th Cir. 1995).  See also In re Managed Care Litigation, 150 F. Supp. 2d 1330, 1344 (S.D. Fla. 2001) (holding that the filed rate doctrine did not apply where there was no extensive administrative oversight).  Accordingly, the filed rate doctrine does not bar Plaintiffs' case.

Abels, 678 F. Supp. 2d at 1277.  This reasoning was persuasive to the court in Cannon, 917 F. Supp. 2d at 1038.  The court also cited the 2012 decision in Kunzelmann, which distinguished claims alleging unearned kickbacks from claims challenging the reasonableness of the filed rate.  Cannon, 917 F. Supp. 2d at 1038.  However, these arguments are nothing more than a repackaged version of the arguments plaintiff raised in conjunction with her kickback claims.

Plaintiff's concern that the non-insurer defendants are not subject to administrative oversight is misplaced.  The crux of plaintiff's claims against the non-insurer defendants is

that they conspired with the insurer defendants to have her pay excessive premiums so that they could share in the illicit profits.  Although the Commissioner of Insurance does not regulate mortgage lenders, it does regulate the premium rate ultimately charged to plaintiff. Try as she might, plaintiff cannot avoid the fact that she is asking this court to determine what rate the insurance company defendants should have charged instead of the rates they did charge.  Wah Chang, 507 F.3d at 1226.  That is exactly what the filed rate doctrine forbids.  As defendants point out, other courts agree and have applied the filed rate doctrine to claims brought against parties that did not file the rate at issue.  E.g., Roussin, 664 F. Supp. 2d at 419 (doctrine bars plaintiff's claims seeking relief—albeit indirectly—for injury allegedly caused by rate on file with regulatory agency); Hooks v. American Medical Security Life Insurance Co., 2008 WL 3911130, *6 (W.D.N.C. Aug. 19, 2008) (applying doctrine to claims brought against non-profit holder of group health insurance policy that made insurance available to members but was not insurer and did not file rates at issue); Steven, 2000 WL 33128256, at *3 (applying doctrine to force-placed insurance claims against mortgage servicer).  The Court of Appeals for the Seventh Circuit has rejected attempts to avoid application of filed rate doctrine on the ground that a regulatory agency did not provide sufficient oversight.  Goldwasser v. Ameritech Corp., 222 F.3d 390, 402 (7th Cir. 2000) (rejecting argument that state public utility commissions nominally oversee rate-setting and rarely exercise their muscle).

Accordingly, I find that the filed rate doctrine bars all of plaintiff's federal and state kickback claims.

C. <u>Failure to State a Claim</u>

The Bank of America defendants argue that plaintiff cannot state a claim for breach of contract and the implied covenant of good faith and fair dealing because the mortgage contract that she signed allows these defendants to determine the period of insurance. Plaintiff's mortgage provides that "[t]his insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires."  Dkt. #42-1 at ¶ 5. On its face, the mortgage places no limits on the periods for which the lender may require insurance.  However, plaintiff contends that there are implied limits through the covenant of good faith and fair dealing that require defendants to act reasonably.  She also argues that the backdated term of the force-placed policy was not a contract of insurance because no risk of loss shifted to defendants.  <u>Hillegass v. Landwehr</u>, 176 Wis. 2d 76, 81, 499 N.W.2d 652, 654-55 (1993) (critical element that defines contract for insurance "is a contractual shifting of risk in exchange for premiums"); Wis. Stat. § 600.03(25)(a)1 (defining "insurance" as including "[r]isk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money.").

According to defendants, it is reasonable to backdate hazard insurance to the date of the lapse when no one knew whether a loss had occurred during the lapsed period.  In support, they cite the decisions in <u>Schilke</u>, 820 F. Supp. 2d at 834 (rejecting backdating allegations because lenders who backdate insurance coverage appropriately do so to "ensure that [their] interest in the property [is] protected with continuous, adequate insurance

coverage"); <u>Cannon v. Wells Fargo Bank, N.A.</u>, 2013 WL 3388222, *5 (N.D. Cal. July 5, 2013) ("Plaintiffs failed to explain . . . why it would be unreasonable to backdate flood insurance given that, e.g., some damage may not be readily apparent (such as mold)."); <u>LaCroix v. U.S. Bank, N.A.</u>, 2012 WL 2357602, *5 (D. Minn. June 20, 2012) ("Backdating policies, however, ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage."); and <u>Webb v. Chase Manhattan Mortgage Corporation</u>, 2008 WL 2230696, *19 (S.D. Ohio May 28, 2008) (granting summary judgment because "Chase had to ensure that the property was continuously covered in the event that a loss had occurred during the lapse in insurance coverage because no inspection of the property was done").  (I have not considered defendants' reference to recent regulations promulgated by the Bureau of Consumer Financial Protection because those regulations do not become effective until January 10, 2014, well after the period at issue in this case.)

Contrary to plaintiff's assertions, the backdated insurance was not worthless or unreasonable.  At the time it was purchased, a claim still could have been made with respect to some unknown damage to the property.  In any event, the mortgage contract also expressly allows the lender to obtain insurance coverage at the borrower's expense for any period that it deems appropriate.  Accordingly, I am dismissing the backdating claims for failure to state a claim.

ORDER

IT IS ORDERED that

1.  The motions to dismiss filed by defendants QBE Holdings, Inc., QBE Insurance Corporation, QBE Financial Institutional Risk Services, Inc.,  Balboa Insurance Company, Meritplan Insurance Company and Newport Management Corporation, dkt. #37, and defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, LP and Banc of America Insurance Services, Inc., dkt. #41, are GRANTED and plaintiff's complaint is DISMISSED;

2.  The QBE defendants motion for oral argument, dkt. #40, is DENIED;

3.  The Bank of America defendants' motion for leave to file documents, dkt. #43, is GRANTED; and

4.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 25th day of October, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

21